Rel: April 3, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0331 & CL-2025-0332

_____

### Coker Bart Cleveland

### v.

### Mary Alison Armstrong

### Appeals from Calhoun Circuit Court
### (DR-19-900127.01 and DR-19-900127.02)

BOWDEN, Judge.

Coker Bart Cleveland appeals from an order of the Calhoun Circuit

Court denying Cleveland's postjudgment motion to set aside a default

judgment that was entered in the cases underlying these appeals.[1] When the default judgment was entered, however, the underlying cases were on appeal in this court. The default judgment is therefore void, and Cleveland's appeals, which ultimately seek to set aside the default judgment, does not present a justiciable controversy. Accordingly, we dismiss Cleveland's appeals with instructions.

## Procedural History

Cleveland and Mary Alison Armstrong were divorced by a judgment entered on August 12, 2019. That judgment, among other things, awarded the parties joint custody of S.C., the parties' child. On September 21, 2022, Cleveland commenced an action to modify the custody of S.C. that was assigned case number DR-19-900127.01 ("the .01 action"). In his modification petition, Cleveland alleged that there had been a material change in circumstances since the entry of the August 12, 2019, judgment and that he could "introduce evidence that will

---

[1]The record reflects that the same default judgment was entered in both cases underlying these appeals. For simplicity, we refer to identical documents filed in the underlying cases in the singular tense when practicable.

overcome the inherent disruptiveness caused by a change of custody of [S.C.]." Armstrong filed an answer and counterpetition to modify custody on November 16, 2022.

On September 19, 2022, Chief Justice Parker of the Alabama Supreme Court appointed Judge James Malone to preside over the .01 action.

On September 7, 2023, Armstrong filed a petition for a rule nisi, which commenced the action assigned case number DR-19-900127.02 ("the .02 action"). On February 14, 2024, Chief Justice Parker appointed Judge George Day, Jr., to preside over the .01 and .02 actions; Chief Justice Parker's order was entered into the record on September 4, 2025. Also on February 14, 2024, Armstrong filed a motion seeking "immediate psychological evaluation of [Cleveland]." The next day, February 15, 2024, Armstrong filed an ex parte motion seeking immediate custody of S.C.

On February 20, 2024, the circuit court entered an order ("the February 20, 2024, order") that (1) required Cleveland to undergo a psychological evaluation and color-code drug testing; (2) appointed a guardian ad litem for S.C.; and (3) suspended Cleveland's "unsupervised

visitation." The February 20, 2024, order also consolidated the .01 and .02 actions for trial and set those cases for a final hearing on September 6, 2024.

On February 23, 2024, the parties reached a temporary agreement regarding the pendente lite custody of S.C., which included supervised visitation by Cleveland. The circuit court entered an order adopting that agreement that same day.

After multiple continuances, a hearing on the .01 and .02 actions was held on November 21, 2024. Cleveland failed to appear for the hearing, despite the circuit court's attempts to contact him. Armstrong made an oral motion to dismiss Cleveland's petition to modify custody, which was granted. Armstrong also made an oral motion for a default judgment with respect to her petition to modify custody and her petition for a rule nisi. The circuit court granted the oral motion for a default judgment and proceeded to receive testimony and evidence.[2]

---

[2]Although Armstrong's motion to dismiss and motion for a default judgment were orally granted at the November 21, 2024, hearing, those oral pronouncements were not yet orders of the court. Cash v. Sumner, 99 So. 3d 1241, 1243 (Ala. Civ. App. 2012) ("'Rule 58(a)[, Ala. R. Civ. P.,] does not allow for an oral rendition of a judgment or order.' Ex parte Chamblee, 899 So. 2d 244, 248 (Ala. 2004).").

On December 6, 2024, Cleveland filed a posttrial motion for a new trial; that motion was denied on December 15, 2024. On December 17, 2024, at 9:46 a.m., Cleveland filed a Form ARAP-1 "Notice of Appeal"[3] ("the first notice of appeal") in the circuit court.[4] The first notice of appeal is directed to the February 20, 2024, order, stating "Notice is Hereby Given that the above-named appellant(s) appeal(s) to the above-designated court from the ... February 20, 2024 Ex Parte Order." The first notice of appeal is signed by Cleveland as the "Appellant," and it indicates that an appeal is being taken to the "Alabama Court of Civil Appeals." Cleveland also attached documents to the first notice of appeal, including a docketing statement, which is required to file an appeal, see Rule 3(e), Ala. R. App. P. ("Each notice of appeal to an appellate court, at

---

[3]"Form ARAP-1[] is the standard notice of appeal for appeals ... to [the Court of Civil Appeals]." Okafor v. State, 225 So. 3d 72, 80 (Ala. Civ. App. 2016), reversed on other grounds, 225 So. 3d 93 (Ala. 2016). This court "strongly encourages" parties to use the Form ARAP-1 when filing appeals. See id. ("[T]his court ... strongly encourages appellants and attorneys to utilize the sample forms that appear in the Appendix to the Alabama Rules of Appellate Procedure [like the Form ARAP-1] when filing appeals to this court." (emphasis added)).

[4]Rule 3(a)(1), Ala. R. App. P., provides, in pertinent part, that "[a]n appeal ... shall be taken ... by filing a notice of appeal with the clerk of the trial court ...."

the time it is filed with the trial court, shall be accompanied by the appropriate 'Docketing Statement'")), a petition for writ of mandamus with supporting exhibits, and a "Letter of Transmittal of Notice of Appeal to Appellate Clerk by Trial Clerk," which forwarded the "written notice of appeal" for filing with the clerk of the Court of Civil Appeals.

At 10:00 a.m. that same day, December 17, 2024, Cleveland filed a second Form ARAP-1 ("the second notice of appeal") in the circuit court. The second notice of appeal is identical to the first notice of appeal; however, the second notice of appeal does not contain a docketing statement, a "Letter of Transmittal of Notice of Appeal to Appellate Clerk by Trial Clerk," or a petition for the writ of mandamus. The second notice of appeal does contain exhibits, however, which Cleveland indicated would constitute the record on appeal. This court styled the appellate proceedings arising from Clevland's Form ARAP-1s in the form of appeals and assigned them appellate-court case numbers CL-2024-0983 and CL-2024-0984 ("the first appeals").

On December 26, 2024, Cleveland filed petitions for the writ of mandamus with this court. This court assigned those petitions appellate-court case numbers CL-2024-1002 and CL-2024-1003 ("the mandamus

6

proceedings") and styled the mandamus proceedings in the form of petitions for the writ of mandamus.

On December 29, 2024, the circuit court purported to enter final judgment ("the December 29, 2024, judgment") in the .01 and.02 actions.

On January 10, 2025, this court entered the following order that dismissed the first appeals:

> "On December 17, 2024, Coker Bart Cleveland ('the father') filed notices of appeal in Calhoun Circuit Court case numbers DR-19-900127.01 and DR-19-900127.02, to which he attached petitions for the writ of mandamus. This court docketed those cases as appeal numbers CL-2024-0983 and CL-2024-0984. [Cleveland] has since filed identical petitions for the writ of mandamus directly with this court, which this court has docketed as appeal numbers CL-2024-1002 and CL-2024-1003. Accordingly, appeal numbers CL-2024-0983 and CL-2024-0984 are dismissed, and [Cleveland's] cases will proceed in this court under appeal numbers CL-2024-1002 and CL-2024-1003."

(Emphasis added.)

The circuit court also entered an order on January 10, 2025, at 5:13 p.m. The circuit court noted that Cleveland had filed several motions objecting to the December 29, 2024, judgment but that, with respect to one motion, "the Court declines to rule on the Motion at this time because the said Motion was filed after [Cleveland] had filed a Notice of Appeal in this case." (Emphasis added.)

7

On January 15, 2025, this court entered an order dismissing the mandamus proceedings, stating that Cleveland's mandamus petitions were "denied as moot because [the circuit court] has entered a final, appealable judgment."

On January 21, 2025, Cleveland filed a motion ("the postjudgment motion") seeking to set aside the December 29, 2024, judgment to the extent that it granted Armstrong a default judgment and seeking to alter, amend, or vacate the December 29, 2024, judgment to the extent that it granted Armstrong's oral motion to dismiss for lack of prosecution. Cleveland attached numerous exhibits to the postjudgment motion.

On January 28, 2025, the circuit court entered an order that scheduled Cleveland's postjudgment motion for a hearing. The January 28, 2025, order states, among other things: "The [circuit court] has noted that while [Cleveland] filed a Notice of Appeal even before entry of the said final judgment, the Notice of Appeal appears to have been directed only to the Court['s] ex parte order in this case."

On January 29, 2025, the clerk of this court issued the following certificate of judgment in the first appeals:

> "The appeals in the above causes having been duly
> submitted, IT IS CONSIDERED, ORDERED, AND

8

ADJUDGED that the appeals were dismissed on January 10, 2025. The certificate of judgment is issued on this day.

"IT IS FURTHER ORDERED that the costs of the appeal(s) are taxed against the appellant(s) and sureties as provided by Rule 35, Ala. R. App. P."

(Capitalization in original.)

On April 11, 2025, the circuit court held a hearing on the postjudgment motion, and, on April 20, 2025, it entered an order denying that motion in part and granting it in part. Cleveland timely appealed.

<u>Subject-Matter Jurisdiction</u>

Cleveland's appeals present two questions regarding subject-matter jurisdiction, one raised by Cleveland and one that we raise <u>ex mero motu</u>. See <u>McElroy v. McElroy</u>, 254 So. 3d 872, 875 (Ala. 2017) ("[I]t is the duty of an appellate court to notice the absence of subject-matter jurisdiction <u>ex mero motu</u>."). We must resolve questions of subject-matter jurisdiction before we can reach the merits of an appeal. See <u>Jones v. Brewster</u>, 282 So. 3d 854, 856 (Ala. 2019)("Before addressing the merits of Chris Jones's appeal, this Court must determine whether the circuit court had subject-matter jurisdiction over the will contest."). Accordingly, we must address the issues of subject-matter jurisdiction presented by Cleveland's appeals before reaching their merits.

9

<u>Standard of Review</u>

The standard of review for issues involving subject-matter jurisdiction is de novo. <u>Martin v. Martin</u>, 329 So. 3d 1242, 1243 (Ala. 2020) ("We review issues of subject-matter jurisdiction de novo.").

<u>Analysis</u>

I.  <u>Did Judge Day have jurisdiction to enter orders in the .01 and .02 actions?</u>

Cleveland argues that all orders entered by Judge Day are void for lack of subject-matter jurisdiction. He reasons that Judge Day lacked jurisdiction to enter orders in the .01 and .02 actions because, he argues, Judge Malone did not release jurisdiction over the .01 and .02 actions and Judge Day was not appointed to preside over the .01 and .02 actions. Specifically, Cleveland argues that the record lacks evidence of those events having occurred.

Cleveland's argument that Judge Malone was required to release jurisdiction for Judge Day to obtain jurisdiction is not supported by relevant legal authority. Specifically, he provides no legal authority demonstrating that, for a subsequent judge to be validly appointed, the initial judge must "release" jurisdiction. Thus, even if the record lacks an

order indicating that Judge Malone "released" jurisdiction of the cases, Cleveland has not demonstrated that that absence affects the validity of Judge Day's appointment and subsequent orders.

Cleveland's argument that the record lacks a valid order of appointment for Judge Day is likewise without merit. An order of appointment dated February 14, 2024, by Chief Justice Parker appointing Judge Day to hear the .01 and .02 actions appears in the record on appeal. Although that order was not entered into the record of the circuit court until September 4, 2025, a case-action-summary-sheet entry for February 16, 2024, in the .01 action indicates that the case was "assigned to Judge: George C. Day, Jr. From Etowah County," and a similar entry appears in the case-action-summary sheet for the .02 action, also with an entry date of February 16, 2024.

Moreover, "[t]he appointment to office becomes complete when, and only when, the last act required of the appointing power has been performed. This seems to be an universal rule." Hale v. State ex rel. Algee, 237 Ala. 191, 195, 186 So. 163, 167 (1939). Section 12-1-14, Ala. Code 1975, the relevant statute regarding appointment of circuit-court judges, does not require the entry of the order of appointment in the

11

record to confer the powers, authority, and jurisdiction of the judgeship to which the judge is appointed. Instead, § 12-1-14 appears to require that the judge be appointed; it provides, in pertinent part:

> "Should the need for special judges in the circuit court, district court or probate court arise, the Supreme Court may appoint and commission special circuit judges or special district court judges or special probate judges for temporary service; provided, however, that the person so appointed shall possess the qualifications of the judgeship to which he is appointed. Such special judges shall qualify by taking the oath of office prescribed in the Constitution. <u>Such appointment shall confer on the special judge all powers, authority and jurisdiction of the respective judgeship to which he is appointed</u>. ..."

§ 12-1-14 (emphasis added). The Chief Justice of the Alabama Supreme Court appointed Judge Day to preside over the .01 and .02 actions on February 14, 2024. Thus, Judge Day received authority to preside over the .01 and .02 actions on that date, regardless of when that order was entered into the record.

Cleveland's argument that Judge Day lacked subject-matter jurisdiction to enter orders in the .01 and .02 actions is without merit.

II.     <u>Did the circuit court have jurisdiction to enter the December 29, 2024, judgment?</u>

A.     <u>The significance of jurisdiction.</u>

12

The question of jurisdiction is fundamental, <u>Reynolds v. Colonial Bank</u>, 874 So. 2d 497, 502 (Ala. 2003)(citing <u>Mobile & Gulf R.R. v. Crocker</u>, 455 So. 2d 829, 831 (Ala. 1984)); it is a question of primary importance in every case. <u>Wilkinson v. Henry</u>, 221 Ala. 254, 256, 128 So. 362, 364 (1930); <u>Reynolds</u>, 874 So. 2d at 503. If a court interferes in a case over which it has no jurisdiction, that court's interference "'would amount to usurpation and oppression'" and "'its decrees and judgments would be wholly void.'" <u>Id.</u> at 502-03 (quoting <u>Henry</u>, 221 Ala. at 256, 128 So. at 364).

B. <u>Which court had jurisdiction over the underlying cases when the circuit court entered the December 29, 2024, judgment?</u>

Jurisdiction over a case can be in only one court at a time. <u>Johnson v. Willis</u>, 893 So. 2d 1138, 1141 (Ala. 2004); <u>Reynolds</u>, 874 So. 2d at 503; <u>Ex parte State ex rel. O.E.G.</u>, 770 So. 2d 1087, 1089 (Ala. 2000). Initially, jurisdiction over a case rests with the trial court, but, when a party files a notice of appeal, the notice of appeal divests the trial court of jurisdiction. Thereafter, jurisdiction over the case rests in the appellate court until it disposes of the appeal, even if the appellate court ultimately determines that the notice of appeal was improperly filed. See <u>Million v.</u>

Shumaker, 384 So. 3d 609, 614-15 (Ala. 2023) ("'[W]hen an appeal is taken, unless it is from a proper Rule 54(b), [Ala. R. Civ. P.,] order, the appeal divests the lower court of jurisdiction over the case until the appellate court provides a disposition of the appeal -- even if the appeal is premature, i.e., from a nonfinal judgment.'" (quoting Erskine v. Guin, 384 So. 3d 583, 598 (Ala. 2023))); Dyas v. Stringfellow, 333 So. 3d 128, 132 (Ala. 2021). An appellate court disposes of an appeal when it issues its certificate of judgment, and, when that occurs, the trial court is reinvested with jurisdiction. C.D. v. J.B.O., 360 So. 3d 352, 354 (Ala. Civ. App. 2021); M.G. v. J.T., 105 So. 3d 1232, 1233 (Ala. Civ. App. 2012); Raybon v. Hall, 17 So. 3d 673, 675 (Ala. Civ. App. 2009); Veteto v. Yocum, 792 So. 2d 1117, 1119 (Ala. Civ. App. 2001).

Because jurisdiction over a case can be in only one court at a time, when jurisdiction over the case rests with an appellate court pursuant to the filing of a notice of appeal, a trial court can only issue orders pertaining to matters in the case that are entirely collateral to the matters raised by the appeal. Portis v. Alabama State Tenure Comm'n, 863 So. 2d 1125, 1126 (Ala. Civ. App. 2003)("It is well settled that '[o]nce an appeal is taken, the trial court loses jurisdiction to act except in

14

matters entirely collateral to the appeal.'" (quoting <u>Ward v. Ullery</u>, 412 So. 2d 796, 797 (Ala. Civ. App. 1982))). If a trial court's order pertains to matters that are not entirely collateral to the appeal, the order is void for lack of jurisdiction.

The first notice of appeal and the second notice of appeal each constitute a notice of appeal in both form and substance. In substance, to be considered a "notice of appeal," a filing must (1) specify the party or parties taking the appeal and the party or parties against whom it is taken; (2) designate the judgment, order, or part thereof appealed from; and (3) name the court to which the appeal is taken. Rule 3(c), Ala. R. App. P. ("The notice of appeal shall specify all parties taking the appeal and each adverse party against whom the appeal is taken; shall designate the judgment, order, or part thereof appealed from; and shall name the court to which the appeal is taken."); see also <u>Okafor</u>, 225 So. 3d at 79 (holding that party had filed a notice of appeal because "the docketing statement that [the party had] filed contain[ed] all the information required by Rule 3(c), [Ala. R. App. P.,] including the order appealed from, the party taking the appeal, and the name of the court to which the appeal is taken"), <u>rev'd on other grounds</u>, 225 So. 3d 93. The first notice

of appeal and the second notice of appeal each meet the substantive requirements to be a notice of appeal; they are directed to the February 20, 2024, order, indicate that Cleveland is the party taking the appeal against Armstrong as the appellee, and indicate that an appeal is being taken to the "Alabama Court of Civil Appeals."

The first notice of appeal and the second notice of appeal each constitute a notice of appeal in form also. Although a Form ARAP-1 is not necessary to effectuate an appeal, a Form ARAP-1 "is the standard notice of appeal for appeals to our supreme court and this court." Okafor, 225 So. 3d at 80. Using the Form ARAP-1 to file an appeal is "strongly encouraged." Id. Furthermore, an appellant must file the notice of appeal with the trial court, not this court. See Rule 3(a)(1), Ala. R. App. P. In this case, Cleveland filed a completed Form ARAP-1 with the circuit court, twice.

Accordingly, the first notice of appeal and the second notice of appeal each meet the requirements for a notice of appeal in both form and substance.[5]

---

[5]An appellate court has discretion to treat a notice of appeal as a petition for writ of mandamus. See Ex parte Burch, 730 So. 2d 143, 146 (Ala. 1999). But neither the procedural history of these cases nor the

16

C. <u>The circuit court lacked jurisdiction to enter the December 29, 2024, order.</u>

Cleveland filed notices of appeal in the circuit court on December 17, 2024, that were directed to the February 20, 2024, order and implicated the .01 and .02 actions. At that point, jurisdiction over the cases rested with this court. The circuit court nonetheless entered the December 29, 2024, judgment, which purported to resolve issues related to the rights of the parties and is not a collateral order. Accordingly, the December 29, 2024, judgment, which was entered while jurisdiction rested with this court, is void for lack of jurisdiction. See <u>Ross v. West Wind Condo. Ass'n.</u>, [Ms. CL-2025-0534, Feb. 13, 2026] ___ So. 3d ___, ___ (Ala. Civ. App. 2026)("This court had not yet entered its certificate of judgment ... when the trial court entered its amended judgment ..., and, therefore, that amended judgment is void for lack of jurisdiction."). To hold otherwise would blur clear precedent regarding our jurisdiction,

---

language of the January 10, 2025, order this court entered dismissing the first appeals indicate that this court exercised that discretion at any point.

leaving trial courts to try and determine whether a completed and filed Form ARAP-1 was, in fact, a notice of appeal or was something else.

> D. Cleveland's present appeals must be dismissed.

We recognize that Cleveland's present appeals are not from the December 29, 2024, judgment; instead, Cleveland has appealed from the circuit court's order denying his motion to set aside the December 29, 2024, judgment, an order that the circuit court had subject-matter jurisdiction to enter. Nonetheless, this court may only decide a case when there is a justiciable controversy, which requires an order that can provide relief to the appellant. South Alabama Gas Dist. v. Knight, 138 So. 3d 971, 975 (Ala. 2013)("A justiciable controversy is one that 'is definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a decree.'" (quoting Copeland v. Jefferson Cnty., 284 Ala. 558, 561, 226 So. 2d 385, 387 (1969)) (emphasis added)); id. ("'"The duty of this court, as of every other judicial tribunal, is to decide actual controversies …, … not to … declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (quoting King v. Campbell, 988 So. 2d 969, 976 (Ala. 2007), quoting in

18

turn <u>Mills v. Green</u>, 159 U.S. 651, 653 (1895))). A decision from this court granting Cleveland his requested relief would entail the circuit court's setting aside a judgment that we have already declared is void. We are therefore unable to provide "specific relief through a decree," and we accordingly lack a justiciable controversy in this case. "'Justiciability is jurisdictional,'" <u>Knight</u>, 138 So. 3d at 975 (quoting <u>Ex parte State ex rel. James</u>, 711 So. 2d 952, 960 n.2 (Ala. 1998)), and because the present appeals do not present a justiciable controversy, they are dismissed.

Conclusion

Cleveland's argument that Judge Day's orders were entered without jurisdiction because Judge Day was not appointed to preside over the .01 and .02 actions is clearly without merit. The circuit court, however, lacked jurisdiction to enter the December 29, 2024, judgment because the .01 and .02 actions were before this court on appeal when the December 29, 2024, judgment was entered. As a result, Cleveland's appeals from the order denying his motion to set aside the December 29, 2024, judgment do not present a justiciable controversy. Cleveland's appeals are therefore dismissed, and the circuit court is instructed to

vacate the December 29, 2024, judgment and take further actions consistent with this opinion.

CL-2025-0331 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0332 -- APPEAL DISMISSED WITH INSTRUCTIONS.

Fridy, J., concurs.

Edwards, J., concurs in the result, without opinion.

Moore, P.J., dissents, without opinion.

Hanson, J., recuses himself.